1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRIAN BEINLICK,                          No.  2:19-cv-02095 DAD AC

12                   Plaintiff,

13         v.                                  FINDINGS & RECOMMENDATIONS

14    SANDAR AUNG, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner proceeding through counsel in this civil rights action filed

18    pursuant to 42 U.S.C. § 1983.  Currently before the court are defendants' separately filed motions

19    for summary judgment.  ECF Nos. 49, 50.  The motions have been fully briefed.  ECF Nos. 56-

20    58.  For the reasons explained in further detail below, the undersigned recommends that

21    defendant Aung be granted summary judgment and that defendant Liu's motion for summary

22    judgment be granted in part and denied in part.

23        I.    Procedural History

24          Plaintiff initiated this action on October 16, 2019, and the case now proceeds on plaintiff's

25    Second Amended Complaint, filed July 11, 2021.  ECF No. 7.  At all relevant times, plaintiff was

26    incarcerated in the California Department of Corrections and Rehabilitation ("CDCR"), at Mule

27    Creek State Prison ("MCSP").  On December 5, 2022, the court granted in part, and denied in

28    part, defendants' motion to dismiss.  ECF No. 30.  The court dismissed defendants Dr. Monivirin

                                             1

1    Son, San Joaquin County, and the California Department of Corrections and Rehabilitation

2    ("CDCR") without leave to amend.  The action therefore proceeds against defendants Dr. Aung

3    and Dr. Liu for deliberate indifference to plaintiff's serious medical needs in violation of the

4    Eighth Amendment, and professional negligence under state law.

5         II.     Plaintiff's Allegations

6         Plaintiff began to experience pain in his right testicles and was seen by defendant Dr.

7    Aung, his primary care physician at MCSP, on August 16, 2018.  ECF No. 7 at 2-3.  He was

8    transported to San Joaquin General Hospital ("SJGH") for urgent treatment on the same day.

9    ECF No. 7 at 4.  After an ultrasound, he was diagnosed with multiple epididymal cysts on both

10   testicles with his right side being more severe than his left.  Id.  Hospital staff consulted with

11   defendant Dr. Liu, a urologist at SJGH, who recommended that plaintiff return for follow-up in 2

12   to 3 days.  Id. at 2,4.

13        When plaintiff returned to Mule Creek, he was seen by Dr. Aung again on August 20,

14   2018.  Id. at 4.  Instead of submitting a request for treatment on an urgent basis in light of Dr.

15   Liu's recommendation, Dr. Aung submitted a routine request for consultation at SJGH for

16   plaintiff's continued testicular pain and swelling.  Id.  Dr. Aung also failed to treat plaintiff's

17   worsening pain and only prescribed him an antibiotic during this visit.  Id.

18        Plaintiff submitted additional requests to see his doctor on August 31 and September 4,

19   2018 based on his worsening testicular pain.  Id. at 5.  On September 11, 2018, plaintiff was seen

20   in the prison's clinic for his pain where he was only given numbing cream.  Id.  Dr. Aung saw

21   plaintiff on September 12, 2018 and ignored his worsening testicular pain.  Id.

22        Finally, on October 11, 2018, plaintiff was sent out for his consultation with Dr. Liu at

23   SJGH.  Id.  Dr. Liu prescribed a Non-Steroidal Anti-Inflammatory Drug ("NSAID") to reduce

24   plaintiff's swelling and indicated that if this was unsuccessful, plaintiff would need surgery.  Id.

25   However, plaintiff's medical records indicated that plaintiff was allergic to NSAIDs and should

26   not be prescribed any.  Id.

27        Plaintiff was seen by Dr. Aung on October 12, 2018 and November 6, 2018 for a different

28   medication since he was allergic to NSAIDs and his pain was still not managed.  ECF No.7 at 5-

2

6. Dr. Aung submitted another routine request for a urology consult rather than an urgent request. Id. at 6.

On December 13, 2018, plaintiff returned to see Dr. Liu for his treatment options and was told that aspirating the cysts was not an option. Id. at 6.  Dr. Liu told plaintiff that surgery was his only option. Id.  Plaintiff requested another ultrasound before the surgery was performed, but that request was ignored. Id.  Dr. Liu performed the surgery on December 21, 2018 and, in the course thereof, severed plaintiff's right testicular artery requiring the removal of the whole right testicle. Id.

Following surgery, plaintiff had ongoing pain in his left testicle.  In appointments with Dr. Aung on January 3,  February 1 and 28, 2019, plaintiff was once against prescribed an ineffective NSAID for his pain.  ECF No. 7 at 7.

Plaintiff had a consultation with a different urologist, Dr. Sorbera, on March 14, 2019 due to ongoing pain and increased swelling in his testicles.  ECF No. 7 at 8.  Back at Mule Creek. Dr. Aung ignored this specialist's recommendations.  Id. at 8.

Based on these facts, plaintiff alleges in claim one that defendants Dr. Aung and Liu were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  ECF No. 7 at 9.  In his second cause of action, plaintiff alleges that that defendants were professionally negligent.  ECF No. 7 at 9-10.

Plaintiff was released from CDCR custody on December 11, 2019.  ECF No. 7 at 1.

III.    Motions for Summary Judgment

A.    Defendant Aung

Plaintiff filed a Statement of Non-Opposition to Dr. Aung's motion.  ECF No. 57. Because plaintiff, through counsel, does not oppose the granting of summary judgment to Dr. Aung, that will be the recommendation.

B.    Defendant Liu's Arguments

The briefing has also narrowed the issues in dispute regarding Dr. Liu's motion.  At the outset, the court notes that the parties' briefs have narrowed the issues in dispute.  Defendant Liu acknowledges, "for purposes of this motion only, that Mr. Beinlick has articulated facts sufficient

3

1  to create a factual dispute precluding summary judgment of his state law medical malpractice

2  claim."  ECF No. 58 at 9 (reply).  Therefore, the court's discussion of defendant Liu's motion for

3  summary judgment is limited to plaintiff's Eighth Amendment deliberate indifference claim and

4  the request for punitive damages.  ECF No. 50.

5       In his motion, Dr. Liu submits that the undisputed material facts demonstrate that: (1) he

6  did not prescribe medications to which plaintiff was allergic; (2) the epididymectomy procedure

7  performed by Dr. Liu was medically indicated and a less invasive procedure was not appropriate;

8  (3) the surgery was competently performed by Dr. Liu despite the complication that occurred; (4)

9  plaintiff received appropriate pain medications from Dr. Liu after surgery; (5) Dr. Liu's treatment

10  was not negligent and was within the medical standard of care at all times.  ECF No. 50-2 at 10-

11  14.  In support thereof, defendant Liu submitted a declaration from Edward J. Yun, M.D., a

12  board-certified urologist, stating that the treatment and surgical intervention provided to plaintiff

13  by Dr. Liu was proper and well within the standard of care for physicians practicing in the same

14  or similar circumstances.  ECF No. 50-3.  In addition, defendant Liu asserts that plaintiff is not

15  entitled to punitive damages because there is no evidence of any evil motive or reckless and

16  callous indifference towards plaintiff.  ECF No. 50-2 at 14-15.

17       C.    Plaintiff's Response

18       With regard to the Eighth Amendment deliberate indifference claim, plaintiff points out

19  that there is no dispute that plaintiff had a serious medical need.  ECF No. 56 at 13.  Plaintiff

20  submits that the declaration of his medical expert, Dr. Karlovsky, demonstrates that defendant Dr.

21  Liu followed a course that was medically unacceptable under the circumstances thus establishing

22  the subjective state of mind required to establish deliberate indifference.  ECF No. 56 at 13-14.

23  This is also established based upon plaintiff's subsequent diagnosis and treatment by Dr. Sorbera

24  as well as the ineffectual use of NSAID's to treat plaintiff's pain for months before

25  recommending surgery.  Id.

26       Lastly, plaintiff argues that defendant Dr Liu's conduct rises to the level of callous and

27  reckless indifference to plaintiff's federally protected rights, even though he does not point to any

28  evidence that establishes this.  ECF No. 56 at 14.

4

1       D.      Defendant's Reply

2           By way of reply, defendant Liu emphasizes that an Eighth Amendment violation is not

3   established by just pointing to evidence that a doctor's chosen course of treatment was medically

4   unacceptable under the circumstances.  ECF No. 58 at 2 (citing Hamby v. Hammond, 821 F.3d

5   1085, 1092 (9th Cir. 2016)).  In this regard, plaintiff must do more than simply demonstrate that

6   defendant was negligent or committed medical malpractice.  ECF No. 58 at 2-3.  The undisputed

7   medical evidence establishes that "Dr. Liu provided Mr. Beinlick with extensive medical care,

8   diagnosis and treatment for his medical condition as well as prescribing medication to address it."

9   Id. at 3.  Plaintiff's evidence merely establishes a difference of opinion between Dr. Liu and Dr.

10  Karlovsky which is not sufficient to meet the Eighth Amendment standard of deliberate

11  indifference.  Id. at 4.  "Dr. Karlovsky's speculation about the viability of, or even the superiority

12  of, alternate courses of medical care or treatment do not supply a sufficient basis for an Eighth

13  Amendment constitutional violation claim under 42 U.S.C. §1983 as a matter of law."  Id. at 6.

14  Because there is no record evidence that defendant Dr. Liu consciously disregarded any excessive

15  risk to plaintiff's health, he is entitled to summary judgment.  Id. at 7.

16          With regard to punitive damages, plaintiff's "failure to provide a substantive response

17  articulating facts showing "evil motive or intent or reckless and callous indifference to federally

18  protected rights" is a concession that his claims regarding his alleged entitlement to punitive

19  damages are inadequately pled."  ECF No. 56 at 9-10.

20  IV.     Legal Standards for Summary Judgment

21          Summary judgment is appropriate when the moving party "shows that there is no genuine

22  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

24  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

25  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

26  moving party may accomplish this by "citing to particular parts of materials in the record,

27  including depositions, documents, electronically stored information, affidavits or declarations,

28  stipulations (including those made for purposes of the motion only), admissions, interrogatory

1   answers, or other materials" or by showing that such materials "do not establish the absence or

2   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

3   support the fact." Fed. R. Civ. P. 56(c)(1).

4          "Where the non-moving party bears the burden of proof at trial, the moving party need

5   only prove that there is an absence of evidence to support the non-moving party's case." Oracle

6   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

7   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

8   motion, against a party who fails to make a showing sufficient to establish the existence of an

9   element essential to that party's case, and on which that party will bear the burden of proof at

10   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

11   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

12   a circumstance, summary judgment should "be granted so long as whatever is before the district

13   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

14   56(c), is satisfied." Id.

15          If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

17   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

18   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

20   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

21   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

22   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

23   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

24   party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

25          In the endeavor to establish the existence of a factual dispute, the opposing party need not

26   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28   trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

1  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

2  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

3  whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

4  quotation marks omitted).

5         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

6  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

7  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

8  opposing party's obligation to produce a factual predicate from which the inference may be

9  drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

10  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

12  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

13  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

14  U.S. at 289).

15        V.      Eighth Amendment Deliberate Indifference Legal Standard

16        Denial or delay of medical care for a prisoner's serious medical needs may constitute a

17  violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S.

18  97, 104-05 (1976).  An individual is liable for such a violation only when the individual is

19  deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d

20  1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

21  Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).  A physician need not fail to treat an inmate

22  altogether in order to violate that inmate's Eighth Amendment rights.  Estelle v. Gamble, 429

23  U.S. 97, 106 (1976) (emphasizing that acts of omission as well as commission may rise to the

24  level of deliberate indifference); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989)

25  (per curiam).  A failure to competently treat a serious medical condition, even if some treatment

26  is prescribed, may constitute deliberate indifference in a particular case.  Id.

27        In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439

28  F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other

7

grounds by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  <u>Id.</u>, citing <u>Estelle</u>, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  <u>Lopez</u>, 203 F. 3d at 1131-1132, citing <u>McGuckin</u>, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  <u>Jett</u>, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  <u>Id.</u>  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  <u>Id.</u> at 839.  A showing of merely negligent medical care is not enough to establish a constitutional violation.  <u>Frost v. Agnos</u>, 152 F.3d 1124, 1130 (9th Cir. 1998), citing <u>Estelle</u>, 429 U.S. at 105-106.  A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  <u>See, e.g.</u>, <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference."  <u>Shapley v. Nev. Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).  Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case."  <u>Hallett</u>, 296 F.3d at 745-46; <u>see</u> <u>McGuckin</u>, 974 F.2d at 1060.

////

////

8

VI.     Legal Standards Governing Punitive Damages

In a § 1983 case, punitive damages are proper where a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1982).

VII.    Undisputed Material Facts[1]

A.     Pre-Surgical Medical Treatment

On August 16, 2018, the CDCR transported Mr. Beinlick to the emergency room of San Joaquin General Hospital ("SJGH") with complaints of right testicular pain.  ECF No. 56-1 at No. 46 (Plaintiff's Response to Defendant Liu's Statement of Undisputed Facts) (hereinafter referred to as "PSUF"); ECF No. 58-1 at No. 46 (Defendant Liu's Response to Plaintiff's Additional Undisputed Facts).  The SJGH emergency department consulted with urologist/defendant Dr. Liu, via telephone.  PSUF at No. 46.  Dr. Liu recommended that Mr. Beinlick present to the urology clinic in 2-3 days for outpatient management.  ECF No. 50-1 at No. 5 (Defendant Liu's Separate Statement of Undisputed Material Facts) (hereinafter referred to as "DSSUMF").  The SJGH emergency department advised a physician at Mule Creek State Prison of Dr. Liu's recommendations.  DSSUMF at No. 5.

Plaintiff was subsequently examined and received additional medical treatment by CDCR physicians and medical staff, including the prescription of pain medications, for testicular pain and/or discomfort on August 17, 2018; August 20, 2018; September 11, 2018; September 12, 2018; and, October 1, 2018.  DSSUMF at No. 6.

On October 11, 2018, Mr. Beinlick was seen by Dr. Liu and reported swelling and pain in his right testicle.  PSUF at No 47.  On examination, Dr. Liu determined that plaintiff had bilateral epididymal cysts.  PSUF at No. 47.  Dr. Liu discussed treatment options with Mr. Beinlick including conservative treatment with nonsteroidal anti-inflammatory medications and surgical intervention.  PSUF at No. 47.  Dr. Liu recommended that Mr. Beinlick try the conservative treatment with medication for a few months and if the pain persisted, Dr. Liu would see him again

---

[1] Unless otherwise noted, these facts are undisputed by the parties or are deemed undisputed by the court upon review of the record evidence.

to discuss excision of the epididymal cysts via surgical intervention.  DSSUMF at No. 7.

Plaintiff received additional treatment and pain medications by non-party medical staff at MCSP on October 12, 2018; October 17, 2018; and, November 6, 2018.  DSSUMF at No. 8.

    B.    Surgery

On December 13, 2018, plaintiff had a follow-up appointment with Dr. Liu.  DSSUMF at No. 9.  Dr. Liu examined plaintiff, discussed the nature of his pain, once again diagnosed him with epididymal cyst, and discussed treatment options which included the option of a right epididymectomy to remove the cyst.  DSSUMF at No. 9.  Dr. Liu discussed the risks and benefits of the procedure, but plaintiff disputes that he was informed that testicular loss is an uncommon, but known risk of an epididymectomy.  DSSUMF at No. 9; PSDF at No. 48.  Plaintiff signed a written consent form in which he agreed to accept the risks of the epididymectomy.  ECF No. 50-4 at 29-30.

On December 21, 2018 Dr. Liu performed the scheduled right epididymectomy.  PSUF at No. 49.  Dr. Liu's operative report noted inflammation with cystic changes in the right epididymis.  PSUF at No. 49.  Dr. Liu's operative report also states "[w]hile trying to dissect the epididymis away, we inadvertently in[j]ured the right testicular artery.  Since the testicle will not survive without the artery, we have to remove the testicle as well…"  PSUF at No. 49.  The testicle and epididymis were then removed and sent for pathologic examination.  DSSUMF at No. 10.

According to defendant's medical expert, Dr. Yun, the occurrence of testicular loss or injury is a known but uncommon complication for all intrascrotal operations (including epididymectomy).  DSSUMF at No. 34.  He further is of the opinion that "when procedural intervention is indicated, such as in this case, surgical excision via epididymectomy is the best treatment because aspiration (placing a needle into the cysts) confers an increased risk of cyst recurrence, as well as increased risks of bleeding or infection."  DSSUMF at No. 24.  According to Dr. Yun, the epididymectomy operation was performed with all standard risk-reduction strategies and techniques, and due to the inflammation encountered, a known but uncommon complication occurred.  Dr. Liu managed this complication appropriately and at all times acted

10

1   completely within the standard of urologic care.  ECF No. 50-3 at 21 (Declaration of Edward J.

2   Yun, M.D.).

3       According to plaintiff's medical expert, Dr. Liu performed an unnecessary surgery rather

4   than conducting a less invasive procedure and failed to perform the surgery competently when he

5   injured the testicular artery leading to the loss of plaintiff's right testicle.  ECF No. 56-3 at 18

6   (Declaration of Matthew E. Karlovsky, M.D.).  Plaintiff's expert is also of the opinion that Dr.

7   Liu did not take all standard surgical precautions and techniques to minimize the risk of injury to

8   plaintiff.  PSUF at No. 75.

9           C.      Post-Surgical Medical Treatment

10      Mr. Beinlick was examined and received post-surgical follow-up care and treatment by

11  CDCR physicians and other prison medical professionals on: December 21, 2018; December 24,

12  2018; December 27, 2018; and January 3, 2019.  DSSUMF at No. 11.

13      Mr. Beinlick returned to Dr. Liu on January 31, 2019, reporting that his right sided pain

14  was much better, but still had residual pain on his left side.  PSUF at No. 51.  Dr. Liu's note

15  states: "[T]his man has already lost his right testicle.  I do not think we should be overly

16  aggressive about his pain on the left side.  I told him we should try to manage his pain with using

17  NSAID medicines.  He should not consider any surgical intervention unless it is the last resort

18  because we do not want him to lose his left testicle as well."  DSSUMF at No. 12.  Dr. Liu had no

19  further contact and/or involvement in Mr. Beinlick's care and treatment after January 31, 2019.

20  DSSUMF at No. 13.

21      Mr. Beinlick received additional care and treatment for his left testicle (including, but not

22  limited to, examination, evaluation, and medications) from CDCR physicians (and other CDCR

23  medical professionals) on the following dates: February 1, 2019; February 27, 2019; February 28,

24  2019; March 12, 2019; March 15, 2019; June 10, 2019; July 2, 2019; July 24, 2019; August 8,

25  2019;  August 23, 2019; September 3, 2019; September 12, 2019; October 18, 2019; October 19,

26  2019; October 20, 2019; October 21, 2019; October 24, 2019; and, December 3, 2019.  DSSUMF

27  at No. 14.

28      Mr. Beinlick also received care and treatment at SJGH for his left testicle on August 30,

2019.  DSSUMF at No. 15.  Mr. Beinlick received care and treatment for his left testicle from

Urologist Thomas Sorbera, M.D. on: March 14, 2019; May 30, 2019; October 14, 2019; and,

October 22, 2019.  DSSUMF at No. 16.  During the first appointment, Dr. Sorbera diagnosed

plaintiff with epididymitis and orchialgia, and recommended conservative treatment for the

testicular pain, including an ultrasound of the testis, an alpha blocker to relax the smooth muscle

of the prostatic area and smooth muscle of the vas; and, noted the "presence of epididymal cysts

is not indicative of any significant problem and is not usually the cause of pain".  PSUF at No. 55.

Plaintiff was released from prison on December 11, 2019 and had a microdenervation of

the spermatic cord performed at USC in February 2021.  PSDF at No. 84.  He has been pain-free

since that procedure.  PSUF at No. 84.

D.   Plaintiff's Medications

The parties dispute whether plaintiff ever advised CDCR or SJGH medical staff that he

was not allergic to Ibuprofen.  According to plaintiff's medical expert, plaintiff's non-

responsiveness to NSAIDS suggests that the pain was not inflammatory in nature but neuropathic.

PSUF at No. 61.  Plaintiff's expert specifically faults Dr. Liu for not using any of the widely

available alternative conservative treatment modalities for chronic epididymal pain such as

amitriptyline, gabapentin, pregabalin, tamsulosin, local nerve/cord block, BOTOX injection,

physical therapy, and psychotherapy prior to surgery.  PSUF at No. 66.

Defendant's medical expert is of the opinion that Dr. Liu never prescribed any medication

to which plaintiff was known, or claimed to be, allergic.  DSSUMF at No. 18.  It is also Dr. Yun's

opinion that, following his epididymectomy surgery, Dr. Liu appropriately prescribed

Acetaminophen/Hydrocodone (Norco) and there is no evidence in the medical records that any

medications prescribed to Mr. Beinlick were inappropriate for the management of his

postoperative discomfort following his epididymectomy operation.  DSSUMF at No. 28.

VIII.   Discussion

A.   Deliberate Indifference and Negligence Claims

Regarding the Eighth Amendment claim, the medical evidence provided by plaintiff's

expert creates a material factual dispute as to whether Dr. Liu was deliberately indifferent by

12

failing to competently treat plaintiff's medical condition.  See Ortiz v. City of Imperial, 884 F.2d at 1314.  As to the state law medical malpractice claim, the parties agree that there is a triable question whether plaintiff received appropriate medical treatment that was within the relevant standard of care.  Plaintiff has demonstrated triable issues of fact concerning whether Dr. Liu's course of treatment was "medically unacceptable under the circumstances," and chosen "in conscious disregard of an excessive risk to plaintiffs health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citations and internal quotation marks omitted).  Accordingly, it is recommended that defendant Liu's motion for summary judgment be denied with respect to the Eighth Amendment deliberate indifference and state law medical malpractice claims.

> ###### B.  Punitive Damages

Defendant Liu has met his initial burden of demonstrating the absence of a genuine issue regarding the availability of punitive damages.  Plaintiff has not come forward with any evidence upon which a reasonable jury could find that Dr. Liu's treatment decisions were driven by an evil motive or that he was callously indifferent to plaintiff's serious medical needs.  See Smith v. Wade, 461 U.S. at 56.  Accordingly, the undersigned recommends granting defendant Liu's motion for summary judgment on punitive damages.

> #### CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1.  Defendant Aung's motion for summary judgment (ECF No. 49) be granted, as such relief is expressly unopposed by plaintiff.

2.  Defendant Liu's motion for summary judgment (ECF No. 50) be granted with respect to plaintiff's claim for punitive damages, but denied on plaintiff's Eighth Amendment deliberate indifference and state law medical negligence claims.

3.  The Clerk of Court be directed to enter judgment in favor of defendant Aung.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within 21 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 19, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE